UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:  Case No.: 11-55426
 Chapter 7
MICHAEL RAY ELIAS, and  Hon. Walter Shapero
KATHLEEN FRANCES ELIAS,

        Debtors.
_____/

**OPINION IN CONNECTION WITH THE U.S. TRUSTEE'S
MOTION TO DISMISS UNDER 11 U.S.C. § 707(b)(3)**

The Debtors filed their Chapter 7 petition on May 31, 2011. The U.S. Trustee has since moved to dismiss under 11 U.S.C. § 707(b)(3) ("Motion"). The Debtors' unsecured non-priority debt approximates $75,000.00. They are in their fifties with no dependents. For personal reasons, they moved to the Detroit area from Washington, D.C. sometime in 2008. Mrs. Elias' well-paying job with Chrysler had been eliminated (and as a result she started receiving a pension), and they both were forced to seek new employment in the Detroit area after the move. That took a while and the length of the re-employment process put a strain on their financial situation. However, as of the filing date, Mr. Elias had been employed for one and a half years by Walmart as a Grocery Supervisor with a gross monthly income of $1,605.50, from which $118.86 as a monthly 401(k) contribution was being deducted. Mrs. Elias had then been employed for one year as the Development Supervisor for the Chrysler Museum earning a monthly gross income of $3,813.33. She was also receiving monthly pension income of $4,059.98, making their combined initially filed Schedule I Line 16 income $8,139.20. Their last Amended Schedule J (filed after the initial filing of the Motion) also includes a monthly expense of $1,000.00 designated as an IRS installment payment. Their initial Schedule J listed monthly expenses of $7,140.16, thus leaving $999.04 in

1

excess net income. Schedule B shows Mr. Elias having two 401(k) accounts with a total value of some $5,883.00 and Mrs. Elias having a 401(k) account valued at $7,910.00 and a Retiree Health Care account valued at $13,932.00. Their Schedule I was last amended to reflect a reduction in Mrs. Elias' monthly pension from $4,059.98 to $3,511.33, producing a net monthly Line 16 income of $7,475.61, and thus, an indicated excess income of $542.47.

The essence of the Motion and the Trustee's argument is that this indicated monthly $542.47 surplus considered in light of (a) the monthly 401(k) contribution of $118.86; (b) what is characterized as unreasonable expenses consisting of monthly payments on a pontoon boat and its insurance totaling some $237.00; (c) maintenance expenses for a now surrendered condominium; and (d) certain other expenses argued to be excessive, all combine to constitute "substantial abuse." The breadth and scope of its view of the "totality of circumstances inquiry" under § 707(b)(3) was made clear by this Court in the case of *In re Beckerman*, 381 BR 841 (Bankr. E.D. Mich 2008) - a case which, among other things, dealt with 401(k) contributions. In this case, the monthly excess of income of $542.47 over expenses shown in the Debtors' last filed Schedule J, would produce a forty-three percent dividend to creditors in a 60-month Chapter 13 plan. And, that number (a) leaves in place the noted monthly 401(k) contribution and the pontoon boat expense, totaling some $350.00; (b) does not take into account the fact that the $1,000.00 monthly payment to the IRS will end in some 17 months when that debt will be paid in full making that amount then available to fund a plan; (c) does not take into account the Trustee's argument that the Debtors' $800.00 per month on food expenses exceeds the IRS standard by some $200.00; or (d) an expense item of $300.00 per month for "accounting fees" which the Debtors indicated were bankruptcy cost estimates which in fact have not been paid or actually incurred.

2

The foregoing recitation of the factual record shows that as of now, the Debtors have the ability to substantially fund a theoretical and reasonable Chapter 13 plan out of future earnings and can do so with little or no change in their current lifestyle or even any material belt tightening. That said, however, the Debtors point to other facts which they argue tip the scale in their favor. The factors, other than the ability to pay debts out of future earnings, the courts have enumerated in these cases, which might be relevant here are:

(1) Whether the Debtors have a stable source of income;
(2) Whether the Debtors are eligible for Chapter 13 relief; and
(3) Whether expenses can be reduced without depriving the Debtors of adequate food, shelter, and other necessities.

The facts elicited at the evidentiary hearing indicate that roughly between July of 2008 and about the end of 2010, the Debtors had substantial credit card debts arising from many credit card accounts. At the time, they also had substantial IRA and/or 401(k) accounts. Perhaps commencing sometime in early 2009, they took a series of withdrawals from those accounts totaling some $80,000.00 out of which they spent some $10,000.00 for a replacement vehicle, $4,000.00 in medical expenses, and to pay down, or pay-off, credit card and other debt. Notwithstanding those efforts, as the Schedules indicate, they ended up with the indicated substantial remaining unsecured debt. Those used IRA/401(k) funds, the Debtors apparently later found out, could have been declared exempt in a bankruptcy proceeding filed then and the debts thus discharged in a Chapter 7 case. Given that possibility, the Debtors, if they do not now rue the day they spent those funds for that purpose, do now argue that those debt payments show their good faith efforts to pay off as much of their debt as possible to the point that such is sufficient to afford a defense to the Motion. The U.S. Trustee is not alleging that the Debtors have acted or are acting in bad faith. However, the fact that the Debtors have acted in good faith pre-petition in trying to pay back their debts is not the

3

focus under the statute, and has not been cited by the courts as either the, or a, determining factor in the inquiry. Whatever one thinks of the policy behind, or the reasons for, the enactment of the statute involved here, to accept the Debtors' argument would be to render that statute essentially meaningless. It is to be expected that most debtors would make some effort, even eventually unavailing ones, to pay off their legitimate debts, from whatever the source, and that bankruptcy is more or less considered the last resort. That one would use what might otherwise be funds exemptible in a future bankruptcy case to pay creditors surely speaks well of a debtor - though less so if at the time the debtor was unaware of the exemption possibility. As noted, the result in these cases should not, and does not, turn on either the fact that such payments were made or the source of such payments.

Finally, Mrs. Elias in particular has some concerns about the longevity of her current employment at the museum. At the evidentiary hearing date, she had not received any notice or specific indications that her employment might end. These cases must, of necessity, be based on current and reasonably anticipated facts.

So, applying the remaining indicated factors, it must be said based on the evidence that these Debtors have a stable source of income, and are eligible to be Chapter 13 debtors. If the end result of this matter is that the Debtors choose to convert this case to a Chapter 13 case, the Chapter 13 statute and process are such that changes in financial circumstances during the life of a plan can be accommodated.

Accordingly, the Motion is granted and the moving party shall prepare and present an order which also affords the Debtors a reasonable period, the duration of which shall be spelled out in the order, within which to convert to a Chapter 13 case.

4

**Signed on May 03, 2012**

                                        /s/ Walter Shapero
                                **Walter Shapero**
                                **United States Bankruptcy Judge**